MOSES E. CLAPP and Another v. MINNESOTA GRASS TWINE
COMPANY.[1]

December 10, 1900.

Nos. 12,370—(130).

### County Drains—When Lien of Assessment Attaches.

Under the law authorizing the construction of drains and ditches by counties, whereby the cost of the same is made a charge upon the lands benefited, and a lien is imposed thereon to secure the county, such lien attaches at the time provided for in the statute, and the privilege given to the landowner to pay the same in subsequent assessments does not change the nature of such lien, nor control the time when the lien takes effect, which is upon the auditor's statement under G. S. 1894, §§ 7810, 7811.

### G. S. 1894, § 1623, not Applicable.

The provisions of G. S. 1894, § 1623, for the attachment of liens for ordinary taxes as between the state and the landowner as well as between the grantor and grantee, do not affect or control the assessments provided for in the state drainage law by virtue of the fact that such assessments are collected in the same manner as ordinary taxes.

### Distinct from Lien of General Taxes.

The liens provided for in section 1623 and in section 7811 are distinct, created for different purposes, attach at different times, and impose different conditions upon the landowner under a covenant against incumbrances upon a sale of the land by him.

Appeal by plaintiffs from an order of the district court for Ramsey county, Brill, J., sustaining a demurrer to the complaint. Affirmed.

*A. E. Macartney,* for appellants.

*Harris Richardson,* for respondent.

LOVELY, J.

Appeal from order sustaining demurrer to the complaint upon the ground that it does not state a cause of action.

On December 4, 1899, plaintiffs, for a consideration, gave the defendant an option for twenty days to buy lands in Anoka county,

[1] Reported in 84 N. W. 344.

agreeing, upon defendant's purchase, to convey perfect title by warranty deed. On the 21st of the same month plaintiffs extended the option until January 6 following, upon condition that, if defendant took the land, it would, "in addition to the consideration mentioned in said option, pay the tax of 1899 upon said lands." At the time when the option as extended expired it was discovered that there were unpaid assessments amounting to $600 upon the land, accruing by reason of the construction of a ditch by Anoka county, under the state drainage law (G. S. 1894, c. 125, tit. 2), which plaintiffs claim defendant was required to pay as taxes under the terms of the contract extending the option. This was disputed, and by an arrangement between the parties defendant reserved that sum from the purchase price, but without prejudice to the right of plaintiffs to sue for and recover the same if legally entitled thereto; wherefore this action is brought.

The demurrer raises the single question, viz.: Which of the parties litigant was, under the extension of the option, to pay the drainage assessments which became due, and were a lien upon the land when the sale was concluded? The contention of the plaintiffs is that the provision of the statute that all taxes are a lien from the first day of May for the assessment of each year, "but as between grantor and grantee, such lien shall not attach until the first day of January of the next year thereafter" (G. S. 1894, § 1623),—upon the claim that the assessment under the drainage law was a lien collectible as ordinary taxes,—applied to restrict the liability to pay such disputed amount until the first day of January, 1900, as between the parties. If we could treat the drainage assessment as an ordinary tax, without reference to the provisions of the drainage statute itself under which such assessments were made, this contention would be accurate and logical, and might be controlled by the same rules that apply in all respects to the usual taxes assessed and levied upon lands for state, county, school, and other general purposes; but section 1623, supra, cannot, in our judgment, control this subject absolutely, but must be considered in connection with the provisions of the drainage law, under which the assessment in dispute arose and must be determined.

The ditch for the drainage of the lands in question was con-

structed under the provisions of a statute containing full and plenary powers for that purpose conferred upon the counties of this state, and provides that within thirty days after the letting of contracts for the construction of any ditch, the county auditor shall prepare a statement giving the names of the owners of the lands benefited, the amount of the benefits that each tract will be liable for, with other incidentals, describing location and estimates, general and special, of benefits to the land, as well as of the total cost. This statement is then to be recorded in the office of the register of deeds of the county where the land is. G. S. 1894, §§ 7810, 7811. The statute then further provides:

"And the amount that each tract of land and the interest thereon, as hereinafter provided, * * * will be liable to pay, shall be and remain a lien on such lands, * * * until fully paid; said payments to be made as hereinafter provided. And the filing of such statement in said register of deeds office shall be notice to all the world of the existence of such lien."

The ditch in this case had been constructed nine years previous to the sale of the lands to defendant, and under the requirements of the drainage law one-tenth of the cost of the same was to become due on or before one year thereafter, and one-tenth on or before each succeeding year for the period of nine years; the final payment to be made the tenth year. The statute further provides that "any person may pay the full amount of said lien, with accumulated interest, at any time," and, in substance, that the lands may be sold, in case the instalments are not paid, by means of the ordinary tax proceedings. G. S. 1894, § 7813.

We are unable to avoid the conclusion that the drainage statute, which was enacted to apply to a particular subject, viz. the local improvement of lands through special assessments therefor, should control the same in all the respects specified therein as against other statutory regulations providing generally for the collection of ordinary taxes and the application of liens therefor, even where there is apparent confusion, or even conflict, between them. 23 Am. & Eng. Enc. 321, 422–426; State v. Routh, 61 Minn. 205, 63 N. W. 621.

Whether we treat these special assessments for local improvements as excluded from the provisions of G. S. 1894, § 1623, upon

81 M.—33

the reasonable view that the taxes therein referred to were not intended to apply to such special assessments, or as liens pure and simple, but collectible as taxes, yet the claim upon the land provided for in the drainage statutes above, and the lien under section 1623, supra, are distinct, and take effect each at a different time, as well as under different conditions,—one upon the auditor's statement, while in cases of ordinary taxes on the first day of May in favor of the state, but as between grantor and grantee on the first day of January next. A lien is provided for in each case, and the time when each shall take effect is also designated. The requirement as to the time when the lien for ordinary taxes shall apply is not more imperative than when the lien for the construction of the ditch shall go into effect; and the provision in the drainage law that the assessments thereunder shall be collected as ordinary taxes affects the procedure only, but does not control the substance of the lien itself, nor the time when it must attach to the land, which is expressly designated and fixed. It might have been provided that the amount of the drainage lien should be collected in an action at law, and the land sold on execution, or in some other manner effectual to foreclose the rights of the landowner on nonpayment; but in either case the process of collection would be an incident, rather than the substance of the lien claim itself. We cannot, in this case, decline to give its full weight to the emphatic language of the drainage statute that the amount which each tract of land shall pay "shall be and remain a lien on such lands  *   *   *   until fully paid." The obvious reason of this provision is that such amount, and the whole of it, is due at once, and becomes notice on the filing of the auditor's statement, from which time it is a lien incumbrance on the land, and remains so, as much as a mortgage thereon executed by the owner of the land, until it is discharged. That the landowner may, for his own benefit, and as a privilege, pay the same by instalments, does not change the nature of the obligation, nor the time when it commences to run. Its status is fixed; the amount is known; and in this respect it differs entirely from the ordinary taxes that may accrue for the support of the government and its subsidiary branches from year to year.

The order sustaining the demurrer is affirmed.